## S91A0143. PEPPERS v. THE STATE.
(404 SE2d 788)

SMITH, Presiding Justice.

The appellant, Hoyt C. Peppers, Jr., was convicted of the murder of his wife and sentenced to life imprisonment.[1] We affirm.

The body of the victim was found in her locked automobile in a shopping center parking lot on Wilmington Island. The keys to the vehicle and to the home shared by the victim and the appellant were in the vehicle's ignition switch. She was attired in mismatched clothing. Blood was found on her hands and around her mouth, and she had visible injuries to her wrists and ankles. The victim's injuries were consistent with being bound at the wrists and ankles, with being struck and dragged and having sustained a sexual assault. However, the victim's clothing did not have any associated defects to indicate that she was wearing the clothing when her injuries occurred.

The autopsist determined the cause of death was strangulation. In addition, the victim suffered a number of other cuts, scrapes and bruises, including abrasions to the chest consistent with having been bitten.

In the course of their investigation, police officers discovered a trail of blood between the bedroom and the garage of the home. Blood stains were found on a throw rug in the bedroom and on the bed covers. Blood stained pants and curtains belonging to the appellant were recovered from a dry cleaner where they had been taken two days after the body had been found. Tests confirmed that the pants were stained with human blood. Seminal fluid containing no sperm was found on a pillow sham. The appellant had undergone a vasectomy. A

---

[1] The crime was committed on August 3, 1989. The appellant was indicted on October 11, 1989. The Chatham County jury returned its verdict of guilty on April 12, 1990. A motion for new trial was filed on April 13, 1990 and denied on September 30, 1990. Notice of Appeal was filed on September 11, 1990 and an amended Notice of Appeal was filed on October 2, 1990. The appeal was docketed in this Court on October 30, 1990 and submitted for decision on December 14, 1990.

state expert testified that hairs found on the victim's body were consistent with the head and body hair of the appellant. There was no evidence of a forced entry into the house, and all valuables were in place.

At the time of the murder, the appellant was having substantial financial difficulties, and was involved in negotiations to open a restaurant on Wilmington Island. He was the beneficiary of the victim's substantial property and life insurance. He admitted that he was having several on-going extramarital affairs. Testimony established that the appellant proposed marriage to at least one of his lovers while the victim was still alive. One of the women with whom the appellant was involved indicated that when she and the appellant had intercourse, he would become rough with her breasts consistent with some of the injuries on the victim's body. The woman who received the marriage proposal testified that the appellant bit her while engaging in cunnilingus. Other witnesses testified that the appellant described certain injuries to the victim's ankles, but the police testified that they had not told the appellant of those ankle injuries.

1. The appellant claims that he is due a new trial because the evidence presented against him was circumstantial and did not, as a matter of law, exclude every reasonable hypothesis except that of his guilt. We find no error. Under *White v. State*, 253 Ga. 106, 107 (317 SE2d 196) (1984), "circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of *every* inference or hypothesis except that of the defendant's guilt." The evidence was sufficient for a rational trier of fact to have found the appellant guilty of murder beyond a reasonable doubt, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and no new trial was required.

2. The appellant asserts that the trial court erred in overruling his objection and admitting testimony concerning the biting incident during the act of oral sex. He alleges that the evidence was unduly prejudicial because, under OCGA § 16-6-2, oral sex is a felony for which he was not charged, and the admission was reversible error because there was insufficient similarity between that act and the offense of murder. However, *O'Neal v. State*, 170 Ga. App. 637 (318 SE2d 66) (1984), states:

Evidence of another crime is admissible to show motive, plan, scheme, bent of mind or course of conduct, if some logical connection can be shown between the independent crime and the crime charged other than by showing bad character; this rule has been most liberally extended in the areas of sexual offenses. [Cits.] To be admissible there must be evidence that the defendant was the perpetrator of the independent

crime and there must be sufficient similarity between the independent crime and the offense charged that proof of the former tends to prove the latter. [Cit.]

The " 'rule in Georgia is that if the admissibility of evidence is doubtful, the evidence should be admitted and its weight and effect should be left for jury determination.' " *Bashlor v. State*, 165 Ga. App. 329 (299 SE2d 418) (1983).

The evidence concerning the biting incident during an act of sodomy was admissible as a similar transaction tending to prove the appellant's bent of mind. It was also admissible to show that the obsessive and violent sexual nature of the appellant fit the profile of the hypothetical sexual attacker which the appellant attempted to offer as an alternative to his guilt. Finally, the evidence was admissible to prove the appellant's motive by showing his intimate relationship and obsession with the woman he bit.

3. The appellant claims that his motion for a change of venue should have been granted because of the nature and effect of pre-trial publicity. The standard guiding a trial court's ruling on a motion for a change of venue, as stated in *Lemley v. State*, 258 Ga. 554, 556 (372 SE2d 421) (1988), is two pronged:

First, the court must consider whether the atmosphere in the community is so inherently prejudicial due to pretrial publicity that the defendant cannot receive a fair trial in the community. Secondly, the court must consider whether the defendant cannot receive a fair trial due to the prejudice of individual jurors. [Cits.]

The appellant failed to show that the pre-trial publicity created an inherently prejudicial atmosphere in the community or that the individual jurors were so prejudiced that he could not receive a fair trial. "A motion for change of venue lies within the sound discretion of the trial judge." *Berryhill v. State*, 249 Ga. 442, 445 (291 SE2d 685) (1982). The trial court did not abuse its discretion in denying the appellant's motion for a change in venue.

4. The trial court did not err in denying the appellant's motion to sequester the jury after the first day of deliberations. OCGA § 15-12-142 (a) leaves jury sequestration to the discretion of the trial judge except in capital cases. Here, the State was not seeking the death penalty, and it was not error for the trial court to allow the jury to disperse for the evening after giving appropriate warnings and instructions for them not to discuss or consider matters relating to the proceedings. *Dean v. State*, 238 Ga. 537 (233 SE2d 789) (1977). The trial court dispersed the jury with instructions not to watch any tele-

vision, read any newspaper accounts of the case, or discuss the case with anyone. The appellant cannot claim that the trial court erred by failing to instruct the jury not to "listen to others talk," when defense counsel failed to make that specific request. *Langston v. State*, 162 Ga. App. 795 (293 SE2d 54) (1982).

5. The trial court did not err in denying the appellant's motion for mistrial because the record shows that none of the jurors was exposed to the media while they were dispersed. The trial court, acting on its own initiative, questioned the jurors concerning whether they had any contact with any media. All the jurors answered, under oath, that they did not.

6. The trial court did not err in requiring the foreman of the jury to reveal the numerical division of the jury when the jury indicated it was deadlocked because there is no Georgia authority holding that such questions to a jury are improper.

7. The jury was within its discretion to discount witness testimony stating that the victim's automobile was seen at the Wilmington Island Shopping Center at approximately 7:30 a.m. on the date of the discovery of her body. The record shows that the testimony was equivocal, and was gathered months after the murder. In a jury trial, the credibility of a witness is a matter to be determined by the jury under proper instructions from the court. OCGA § 24-9-80; *Godfrey v. State*, 187 Ga. App. 319 (370 SE2d 183) (1988).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 20, 1991.

*Ashman & Zipperer, Alex L. Zipperer III*, for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf*, for appellee.